# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2019AP90-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, Plaintiff-Respondent-Petitioner, v. George E. Savage, Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 390 Wis. 2d 835,939 N.W.2d 885
(2020 – unpublished)

| | |
|---|---|
| OPINION FILED: | December 23, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 9, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Mark A. Sanders |

JUSTICES:
ZIEGLER, J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Sonya Bice Levinson* and *Donald V. Latoraca*, assistant attorneys general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Sonya Bice*.

For the defendant-appellant, there was a brief filed by *Mark S. Rosen* and *Rosen and Holzman, LTD.*, Waukesha. There was an oral argument by *Mark S. Rosen*.

An amicus curiae brief was filed on behalf of Wisconsin Association of Criminal Defense Lawyers by *Ellen Henak, Robert R. Henak,* and *Henak Law Office, S.C.,* Milwaukee.

2020 WI 93

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2019AP90-CR
(L.C. No. 2016CF3498)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent-Petitioner,**

    **v.**

**George E. Savage,**

    **Defendant-Appellant.**

**FILED**

**DEC 23, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ZIEGLER, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Savage, No. 2019AP90-CR, unpublished slip op. (Wis. Ct. App. Jan. 22, 2020), reversing the Milwaukee County circuit court's[1] judgment and order denying George E. Savage's postconviction motion to withdraw his guilty plea. We reverse.

¶2 Savage was charged with "violation of sex offender registry" for failing to provide an updated address. Savage

---

[1] The Honorable Mark A. Sanders presided.

entered a guilty plea and was sentenced. Nearly one year later, Savage filed a motion to withdraw his guilty plea, arguing that his trial counsel provided ineffective assistance such that his plea was not knowing, intelligent, or voluntary. He argues that his trial counsel was ineffective because she failed to inform Savage that State v. Dinkins, 2012 WI 24, 339 Wis. 2d 78, 810 N.W.2d 787, provided him with an allegedly viable defense that, as a homeless registrant, he is "exempt" from sex offender registration requirements. Savage asserts that if he had known of this alleged defense, he would not have pleaded guilty to the charge and would have instead proceeded to trial.

¶3 After a Machner[2] hearing on Savage's postconviction motion, the circuit court denied Savage's motion, explaining that Savage's trial counsel did not provide ineffective assistance because Dinkins was inapplicable to his case. The court of appeals reversed, holding that the circuit court misconstrued Dinkins, and remanded the case to the circuit court to analyze Savage's ineffective assistance of counsel claim. The court of appeals' interpretation of Dinkins is wrong.

¶4 We conclude that counsel was not ineffective and Savage is not entitled to withdraw his plea post-sentencing. Savage failed to prove by clear and convincing evidence that manifest injustice merits plea withdrawal because Dinkins does not conclude that homeless sex offenders are "exempt" from

---

[2] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

registration requirements. Thus, Savage's trial counsel did not provide ineffective assistance in failing to inform Savage about <u>Dinkins</u> because <u>Dinkins</u> does not provide Savage with a defense.[3] Accordingly, we reverse.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶5  On November 3, 2014, Savage was convicted of exposing his genitals to a child. For this conviction, the circuit court imposed a sentence of one year and six months of initial confinement with two years of extended supervision. Additionally, the circuit court ordered Savage to register as a sex offender for ten years, pursuant to Wis. Stat. § 973.048 (2017-18).[4]  While on the sex offender registry, Savage was required to comply with the reporting requirements under Wis. Stat. § 301.45, including providing updated information to the Department of Corrections (DOC) at regular intervals.

¶6 On March 22, 2016, the day before his initial confinement was to end, Savage signed a Sex Offender Registration form. This form essentially restates the

---

[3] The court of appeals wrongly withheld its independent review of Savage's claim based on a misreading of <u>State v. Sholar</u>, 2018 WI 53, 381 Wis. 2d 560, 912 N.W.2d 89. While it is true that <u>Sholar</u> requires the court of appeals to leave both the deficient performance and prejudice prongs to be addressed after a <u>Machner</u> hearing, <u>Sholar</u>'s holding presupposes a <u>Machner</u> hearing has not yet occurred. <u>See</u> <u>id.</u>, ¶54. In this case, the circuit court held a <u>Machner</u> hearing. Accordingly, the court of appeals could have analyzed both <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), prongs.

[4] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

3

requirements of Wis. Stat. § 301.45 and registers an individual on the sex offender registry. The statute and the form require that a sex offender registrant provide information and subsequent changes to that information such as the registrant's residence, employment, e-mail addresses, internet identifiers, school enrollment, and name change. On the form, instead of listing an address, Savage indicated that he was homeless. At the end of this form was a "Notice of Requirements to Register." It stated, in relevant part, that "when on Wisconsin [DOC] Supervision" the registrant must, "prior to any change in residence, employment, school enrollment, email addresses, internet identifiers, or name change, report the change directly to [the registrant's] assigned Community Corrections Agent. [The Registrant] will also report the change to [the Sex Offender Registry Program] . . . ." Savage initialed after this section to indicate that he understood the requirement for reporting changes in information to his Community Corrections Agent and the Sex Offender Registry Program.

¶7 The following day, Savage was released from his confinement. Because of his homelessness, Savage was placed on a discretionary GPS monitor, pursuant to DOC Administrative Directive #15-12.[5] This guidance document requires a homeless sex offender registrant to "call and speak with the [Probation and Parole Agent] once every seven days, on a weekday, to report

---

[5] We took judicial notice of this Directive on July 15, 2020.

'HOMELESS' status and the location(s) in the city where he/she has been frequenting and sleeping for the previous seven days and plans for the next seven days." DOC Admin. Directive #15-12. The sex offender registrant must also "report the addresses or nearest locations where he/she has frequented and slept, and his/her anticipated residence plan for the upcoming week" and "also update any other required registry data changes." Id.

¶8 Savage remained compliant with his sex offender registry requirements for several months. However, on May 5, 2016, Savage cut off his GPS bracelet and absconded from supervision. Savage's Community Corrections Agent informed the Sex Offender Registry Program of his absconder status on May 18, 2016.

¶9 Savage called the Sex Offender Registry Program hotline twice over the next month providing an updated address, but he never called to update his Community Corrections Agent, as the Sex Offender Registration form required.[6] Savage's last confirmed call to the hotline occurred on June 17, 2016. From May 5 until he was subsequently arrested, Savage continued his non-compliance with supervision.

¶10 On August 4, 2016, the State filed a criminal complaint in the circuit court charging Savage with a single count of "violation of sex offender registry." The State alleged Savage "knowingly failed to comply with reporting

---

[6] Savage claims he called two more times, but the Sex Offender Registry Program had no record of these calls nor the message he claims he left.

requirements under Wis. Stat. §§ 301.45(2) to (4), contrary to Wis. Stat. § 301.45(6), contrary to [Wis. Stat. §§] 301.45(6)(a)1., 939.50(3)(h)." Specifically, Savage "failed to provide the [DOC] with updated information after a change to the information required to be provided by Wis. Stat. sec. 301.45(2)(a)." Savage's judgment of conviction from his 2014 crime and his signed Sex Offender Registration Form were attached to the criminal complaint. The court issued a felony arrest warrant for Savage.

¶11 Savage was arrested and made his initial appearance before the circuit court on February 17, 2017. The court found probable cause for the charge and advised Savage of the maximum penalties, stating, if convicted, he "could face maximum penalties of a $10,000 fine, six years imprisonment." Savage stated that he understood these charges. In a discussion about bail and bail conditions, Savage's trial counsel stated the following:

> I believe for Mr. Savage, Your Honor, this is not a situation where he's unwilling or refusing to follow any registry requirements. He, given homelessness, simply has been unable to do so given that he's simply not going to be able to post any cash bail whatsoever. As the court is aware, there is the felony [violation of parole] hold in place for Mr. Savage. I would ask for a PR bond or a minimum amount of cash bail. I doubt he could pay anything at all.

The court ordered a $1,000 signature bond with conditions.

¶12 On February 28, 2017, Savage waived his right to a preliminary hearing, and the State filed an Information alleging the same criminal count and penalties stated in the complaint.

Savage then entered a plea of not guilty to the charge contained in the Information.

¶13 On May 23, 2017, after learning that the parties reached a plea agreement, the circuit court held a plea hearing. The State informed the court that "[Savage] will be pleading as charged. At sentencing, the state will recommend one year in the House of Correction." Savage filed his Plea Questionnaire/Waiver of Rights form indicating that he would plead guilty to the charge.[7]

¶14 Savage does not assert that the circuit court conducted a defective plea colloquy. Rather, his argument is

---

[7] The record also contains a copy of the jury instruction, which Savage separately initialed, listing the elements of failure to comply with sex offender registration requirements, as follows:

1. The defendant was a person who was required to provide information under [Wis. Stat. §] 301.45.

   A person who is required to comply with the sex offender registration is required to provide information under section 301.45.

2. The defendant failed to provide information as required.

   Section 301.45[(4)] provides that persons required to provide information under section 301.45 must provide changes to school; employment; addresses as required by law.

3. The defendant knowingly failed to provide the required information.

   This requires that the defendant knew that [he] was required to provide the information.

Wis. JI——Criminal 2198 (2012) (modified).

7

that because counsel did not properly advise him of a defense under Dinkins, his guilty plea was not knowingly, intelligently, and voluntarily made.

¶15 Immediately after accepting Savage's guilty plea, the circuit court heard arguments from both the State and Savage regarding sentencing. The State, in accordance with the plea agreement, recommended one year in the House of Corrections. As relevant to this appeal, Savage's trial counsel made the following sentencing argument regarding his homelessness:

> There are so many components and collateral [e]ffects of these registry requirements that can make it very difficult for people who have nothing to comply with it. I don't know how you can return a letter if you don't have an address for which the letter to be sent.
>
> I believe that was the issue for Mr. Savage and sadly for many others that they are incarcerated. Ultimately the sentence is finished, completed, and they are released but often released back into the community with nothing. And I believe that was the situation for Mr. Savage.
>
> In reviewing the notes from the agent and the registry, he was, in fact, calling in, leaving messages with phone numbers, with addresses, emails which he could actually access at a library or other community centers and trying to do so.
>
> In fact, at one point in time his agent told him, meaning Mr. Savage, to use her office address as he would need to see her and then they could continue with the compliance requirements of the registry.
>
> It is noted in those reports it appears his intent was to remain compliant, but there's also an acknowledgment that it can be difficult. And I quote, "This is happening quite a bit especially with the homeless."

8

I believe that is exactly the situation for Mr. Savage. The GPS here was discretionary. I don't know what the thought was behind that or the reasoning. But Mr. Savage literally was staying where he could whether it was empty buildings, back of a car, stairwells.

In speaking with him and hearing his experiences were just frankly horrifying that any individual would have to go through that. I believe he was doing the best he could.

It's so difficult already to find housing, employment, basic services, being part of the registry and then to also throw on what I refer to as an electronic tether for Mr. Savage. I believe he became frustrated, aggravated, and cut it off and then didn't report.

He was also told that because it was discretionary -- This is also in the notes that, "A felony charge -- again I'm quoting, "for tampering with it could not be issued. We will wait to see the outcome of the letter for any further noncompliance."

I also note they kept sending letters to an address where, in fact, the letters were returned. The act of non-reporting, not reporting to his agent ultimately led in Mr. Savage being served with revocation papers.

There was a hearing. The agent was seeking all the time available, two years and three days; and that's exactly what Mr. Savage received.

Outside of the court system, he now is in the prison system and will be serving two years and three days.

I would ask this court to consider that as I know you would but also ask this court to run a sentence here concurrent to that two years. It's a significant amount of time for Mr. Savage. He's not going to be involved in any programming.

After hearing the sentencing arguments, the circuit court did not follow the plea agreement and instead sentenced Savage to 30

9

months of initial confinement followed by 24 months of extended supervision to run concurrently with his current sentence.[8]

¶16 On April 10, 2018, 11 months after being sentenced, Savage filed a postconviction motion seeking to withdraw his guilty plea. Savage claimed that he should be allowed to withdraw his plea because he received ineffective assistance of trial counsel. Specifically, he claimed that his trial counsel was ineffective for "failing to inform him that he could not be convicted of his failure to provide an address as part of his Sex Offender Registration Requirements due to his homelessness."[9] On June 11, 2018, the State filed its response to Savage's postconviction motion.

¶17 On January 3, 2019, the circuit court held a Machner hearing regarding Savage's ineffective assistance of counsel claim. At the hearing, the circuit court heard from both Savage's trial counsel and Savage. As is relevant to this

---

[8] Savage was already serving a revocation sentence of two years and three days, of which 21 months remained. Because of the concurrent nature of the sentences, the circuit court's sentence for "violation of sex offender registry" added nine months on to Savage's confinement from his revocation and placed him on extended supervision for an additional 24 months.

[9] Savage also claimed that his trial counsel promised him that any sentence he received from his plea would run concurrently such that he would not serve additional time in jail beyond his current supervision revocation sentence. The circuit court held that his trial counsel did not deficiently perform regarding this claim and denied Savage's motion to withdraw his plea based on this claim. Savage did not appeal the circuit court's determination on this claim to this court, so we do not address it.

appeal, Savage's postconviction counsel engaged in the following questioning of Savage's trial counsel:

Q. Okay. Now, also [Savage] was homeless, correct?

A. It's my understanding he was homeless. I discussed with him that homelessness was not an absolute defense to the charge.

    I explained as well there was, in fact, a homeless protocol in place through the Sex Offender Registry. For lack of a better word, I'll call them specialists working with DOC.

. . . .

Q. Okay. Now, you agree that you're familiar with State versus Dinkins, correct?

A. Somewhat.

Q. Just for the record, that is Supreme Court case 339 Wis. 2d 78, 2012. And that does state that homelessness is not a defense, correct?

A. Correct.

Q. But it also indicates that, "An inability to provide an address such as if someone is living on a park bench or a stairwell is a defense to registration requirement."

A. If that's what you believe the decision stands for.

. . . .

Q. And you never advised Mr. Savage that an inability to provide an address is a defense, correct?

A. No. Because there was a bigger issue that he also cut off the GPS monitoring unit.

Q. Right. Which you told the judge was discretionary, correct?

11

A. According to the author of the report, it was discretionary. But the specialist or another employee had placed that GPS monitoring unit on Mr. Savage prior to his period of non-compliance.

¶18 On cross-examination, the State asked Savage's trial counsel the following questions:

Q. And you're familiar with the homelessness protocol?

A. Yes.

Q. And that is a protocol that is I guess maybe even more prevalent since the [Dinkins] decision. And you've seen that protocol [be] used in other situations; is that fair?

A. I have. And I've also spoken to specialists at the preliminary hearing to inquire specifically more details of that protect [sic] so I could share it with clients who are facing that situation.

Q. Because ultimately if people can become compliant and aware and understand the protocol, it benefits everybody; is that fair?

A. Very much so.

Q. So you have it sounds like almost done your own research into the homelessness protocol so that you would be able to better explain it to other clients that you had had. Is that accurate?

A. That is. I've asked the specialist specifically what it is, and I can share it with other individuals. I even asked if they had a written one. I wasn't given a written one that described that they would accept park locations, cross streets as long as a call was made in accordance with the registry conditions.

. . . .

Q. Did you have adequate time to discuss all of Mr. Savage's options with him on proceeding to

12

trial or accepting a plea, any following of the homelessness [protocol], any of those?

A. I did. I had given Mr. Savage my direct office line so he could reach me for which he did not need money or phone cards. And I actually met with him at the jail as well in person to afford him a level of privacy and confidentiality that's not always available over the phone given that they are public at the jail or the House of Correction[s] and had discussions with him about both the revocation hearing and the pending case.

¶19 After a brief redirect, the circuit court heard testimony from Savage. As relevant to this appeal, Savage's postconviction counsel asked him the following questions:

Q. Okay. What did [your trial counsel] ever tell you about good faith efforts to comply with sex offender supervision requirements?

A. Nothing.

Q. Did she ever discuss that sort of defense with you?

A. No.

¶20 Savage argued that Dinkins provided him with a defense because of his homelessness and had he known about the defense, he would have taken his case to trial. The State countered by pointing to Savage's trial counsel's familiarity with homelessness claims and her own research into the DOC's homeless sex offender registrant protocol. Thus, the State argued that Savage's trial counsel was not deficient and that any alleged deficiency did not prejudice Savage.

¶21 After the parties finished their arguments, the circuit court made findings of fact and conclusions of law. The court found Savage's trial counsel's testimony "more credible,

13

more persuasive, and to carry the day." Moving to the circuit court's findings of fact and conclusions of law, the court stated the following:

> With respect to the [homelessness defense] claim by the defense, there is likewise no prejudice. That is because the defense misconstrues the decision in Dinkins.
>
> Dinkins contains the words that are recited by the defense but does not contain the meaning for which it is cited.
>
> The [Dinkins] decision involves a defendant who is in custody on a sex related crime. The defendant is being released at his maximum discharge date and will no longer be supervised by anyone.
>
> Consistent with statute, the defendant was required to report to the Sex Offender Registry within ten days of his release -- that is, prior to release, where he was going to live.
>
> The defendant didn't do that. He didn't do that because he was in custody and was unable to find a place to live.
>
> . . . .
>
> . . . The defense presents a semantic argument. The defense says, of course, homelessness isn't a defense; but not knowing where you are going to live and not having a home is a defense which is being homeless.
>
> That is not what Dinkins stands for. Dinkins stands for the proposition that if it is impossible for a person to report an address because of something outside of their control like, for example, being in prison at the time, then there may be a defense. That is not Mr. [Savage's] circumstance.
>
> [His trial counsel] did not tell [Savage] that he had a defense in Dinkins. That is because he did not have a defense in Dinkins.

14

> As a result, there is not prejudice as a result of her not telling him that there was a defense.
>
> Having found that there was not prejudice . . . , I will deny the defense motion for postconviction relief based on ineffective assistance of counsel.

¶22 Savage appealed. On January 22, 2020, the court of appeals reversed the circuit court. Savage, No. 2019AP90-CR, ¶3. The court of appeals concluded, contrary to the circuit court, that Dinkins may have provided a defense to Savage. Id., ¶26. The court of appeals stated that it was "neither finding that trial counsel's performance was deficient nor that Savage suffered any prejudice." Id., ¶31. Instead, because of its interpretation of this court's holding in State v. Sholar, 2018 WI 53, 381 Wis. 2d 560, 912 N.W.2d 89, the court of appeals remanded the case to the circuit court "to make the proper findings of fact and conclusions of law regarding Savage's allegations that trial counsel was ineffective in representing him" in light of the court of appeals' interpretation of Dinkins. Savage, No. 2019AP90-CR, ¶31.

¶23 On February 20, 2020, the State petitioned this court for review. We granted the petition.

## II. STANDARD OF REVIEW

¶24 Savage asks this court to review the circuit court's denial of his postconviction motion to withdraw his guilty plea. We review a circuit court's decision to deny a plea withdrawal motion under an erroneous exercise of discretion standard. State v. Nash, 2020 WI 85, ¶27, ___ Wis. 2d ___, ___ N.W.2d ___. A defendant seeking to withdraw a plea after sentencing must

15

show by clear and convincing evidence that "allowing the withdrawal of the plea 'is necessary to correct a manifest injustice.'" Id., ¶32 (quoting State v. Smith, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996)).

¶25 "One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel." State v. Dillard, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44. "Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact." State v. Breitzman, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." Id. Ineffective assistance of counsel claims have two prongs: "counsel's performance was deficient and that deficient performance was prejudicial." Id. We review de novo whether Savage has proven his trial counsel provided constitutionally deficient assistance and, if so, whether counsel's deficient performance prejudiced him. Id., ¶¶38-39. "If the defendant fails to satisfy either prong, we need not consider the other." Id., ¶37.

## III. ANALYSIS

¶26 We begin our analysis with a discussion of ineffective assistance of counsel claims generally before turning to Savage's ineffective assistance of counsel claim in this case.

16

A. Ineffective Assistance of Counsel Generally

¶27 "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." Lee v. United States, 582 U.S. ___, 137 S. Ct. 1958, 1964 (2017).[10] To demonstrate constitutionally ineffective assistance of counsel, a "defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). While the Sixth Amendment guarantees a right to effective assistance of counsel, this right's purpose is "not to improve the quality of legal representation . . . . The purpose is simply to ensure that criminal defendants receive a fair trial." Id. at 689. Accordingly, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

1. Deficient Performance Prong

¶28 The first prong of an ineffective assistance of counsel claim asks whether counsel performed deficiently. Breitzman, 378 Wis. 2d 431, ¶38. Establishing that counsel's performance was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Stated another way, when evaluating whether

---

[10] This right was incorporated by the Fourteenth Amendment and applies to the states. See Gideon v. Wainwright, 372 U.S. 335, 342-43 (1963) (acknowledging incorporation).

17

counsel performed deficiently, a defendant must demonstrate that counsel's performance fell below "an objective standard of reasonableness." Breitzman, 378 Wis. 2d 431, ¶38 (quoting State v. Thiel, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305). Courts afford great deference to trial counsel's conduct, presuming that it "falls within the wide range of reasonable professional assistance." Id. (quoting State v. Carter, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695). Moreover, in analyzing whether performance was deficient, "every effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate from counsel's perspective at the time." Strickland, 466 U.S. at 689.

¶29 Accordingly, courts evaluate whether counsel deficiently performed on a case-by-case basis. See id. at 688-89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."). While each case is evaluated on the specific facts before the court, certain conduct of counsel will generally fall below the objective standard of reasonableness. See, e.g., Porter v. McCollum, 558 U.S. 30, 39-40 (2009) (per curiam) (holding counsel deficiently performed by failing to conduct a thorough investigation of the defendant's background); State v. Domke, 2011 WI 95, ¶41, 337 Wis. 2d 268, 805 N.W.2d 364 ("Counsel must either reasonably investigate the law and facts or make a

18

reasonable strategic decision that makes any further investigation unnecessary."); Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."); State v. Lemberger, 2017 WI 39, ¶18, 374 Wis. 2d 617, 893 N.W.2d 232 ("[F]ailure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professional competent assistance' sufficient to satisfy the Sixth Amendment." (quoted sources omitted)).

¶30 The permissible range of options for counsel is vast. As such, "ineffective assistance of counsel cases should be limited to situations where the law or duty is clear . . . ." Breitzman, 378 Wis. 2d 431, ¶49 (quoting Lemberger, 374 Wis. 2d 617, ¶33).

¶31 Thus, to satisfy the first prong of an ineffective assistance of counsel claim, a defendant must establish, based on the totality of the circumstances, that counsel's performance fell below an objective standard of reasonableness.

2. Prejudice Prong

¶32 After establishing that counsel performed deficiently, the second prong of an ineffective assistance of counsel claim asks "[w]hether any deficient performance was prejudicial." Breitzman, 378 Wis. 2d 431, ¶39. To show prejudice, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

19

reliable." Strickland, 466 U.S. at 687. Explained further, to prove prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694.

¶33 We have previously stated that "[w]hen the alleged deficiency concerns the plea process, Hill says the prejudice component specifically requires that 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" State v. Cooper, 2019 WI 73, ¶29, 387 Wis. 2d 439, 929 N.W.2d 192 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This inquiry "focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." Lee, 137 S. Ct. at 1966. In Lee, the United States Supreme Court explained the Hill inquiry further:

> A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. See Hill, [474 U.S. at 59]. Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.
>
> But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the

20

respective consequences of a conviction after trial and by plea. See INS v. St. Cyr, [533 U.S. 289, 322-323 (2001)]. When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years. Here Lee alleges that avoiding deportation was the determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation——even if it shaved off prison time——in favor of throwing a "Hail Mary" at trial.

Id. at 1966-67. As this passage indicates, while generally a defendant will change his or her plea only if there is a reasonable probability of success on the merits, there may be particularized circumstances that may cause the defendant to change his or her plea.

¶34 However, the United States Supreme Court did not go so far as to endorse a fully subjective standard either. As the Court explained, "[a]s a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea." Id. at 1966. Further, the Court stated that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1967.

21

¶35 As Lee instructs, to show prejudice from accepting a plea, the defendant has two independently sufficient options to prove that he or she would have not pleaded guilty and would have instead proceeded to trial. First, the defendant can demonstrate based on "contemporaneous evidence" that counsel's deficient performance so offended "expressed preferences" such that the defendant would have not pleaded guilty. See id. Second, the defendant can demonstrate that the defense would have likely succeeded at trial. See id. at 1966.

¶36 Upon showing that counsel's deficient performance caused prejudice, the defendant has successfully cleared Strickland's high bar.

B. Savage's Claim of Ineffective Assistance of Counsel

¶37 Applying those principles, we turn to Savage's claim that his trial counsel failed to raise a defense under Dinkins. To succeed on this claim, Savage must show that his trial counsel's performance fell below an objectively reasonable standard. A trial counsel performance generally falls below an objectively reasonable standard when counsel fails to raise an issue of settled law. See Breitzman, 378 Wis. 2d 431, ¶49; see also Lemberger, 374 Wis. 2d 617, ¶33. The question in this case is whether Dinkins provided Savage with a defense to his "violation of sex offender registry" charge and that if he had known of this defense, he would have changed his plea. We conclude that Dinkins does not provide a defense to Savage, so trial counsel did not perform deficiently. Thus, Savage's claim of ineffective assistance of counsel fails.

22

¶38 Turning to the first prong of the Strickland analysis, we must consider whether Savage's trial counsel performed deficiently.  To prove deficient performance, Savage must show that Dinkins provides him with a defense and his trial counsel failed to raise such a defense.  See Breitzman, 378 Wis. 2d 431, ¶49.  Dinkins provides no such defense for Savage.

¶39 In Dinkins, this court was addressing a homeless defendant's conviction for failing to provide an address for the sex offender registry.  See Dinkins, 339 Wis. 2d 78, ¶5.  In so doing, this court answered the "narrow question of whether, under the circumstances where Dinkins attempted to comply with the registration requirements but was unable to find housing, he can be convicted of a felony for failing to notify the DOC of '[t]he address at which' he would 'be residing' upon his release from prison."  Id., ¶28.  The court answered this question in the negative, stating:

> [A] registrant cannot be convicted of violating Wis. Stat. § 301.45(6) for failing to report the address at which he will be residing when he is unable to provide this information . . . . [A] registrant is unable to provide the required information when that information does not exist, despite the registrant's reasonable attempt to provide it.

Id., ¶63.

¶40 To reach this conclusion, the court interpreted several statutory provisions from Wis. Stat. § 301.45, including § 301.45(2)(d).  See id., ¶¶30-32.  Wisconsin Stat. § 301.45(2)(d) provides, in relevant part:

23

> A person subject to [the registration requirements] who is not under the supervision of the [DOC] or the [DHS] shall provide the information specified in par. (a) to the [DOC] in accordance with the rules under sub. (8). If the person is unable to provide an item of information specified in par. (a), the [DOC] may request assistance from a circuit court or the [DHS] in obtaining that item of information.

The court relied on the "unable to provide" language from this statute to reach its conclusion that "a registrant cannot be convicted of violating Wis. Stat. § 301.45(6) . . . when he [is] unable to provide this information." Dinkins, 339 Wis. 2d 78, ¶52.[11]

¶41 With this understanding of Dinkins, it is evident that Savage does not have a defense under Dinkins for three reasons. First, Savage was under the supervision of the DOC, so he was required to report information pursuant to a different subsection of the statute than Dinkins analyzed. Second, the court in Dinkins recognized that the DOC Administrative Directive #15-12 may have addressed the problem in Dinkins. Finally, the holding in Dinkins must be couched within the factual record in which it rests and is inapplicable to Savage because of key factual differences.

---

[11] The court further explained that "a registrant is unable to provide the required information when that information does not exist, despite the registrant's reasonable attempt to provide it." State v. Dinkins, 2012 WI 24, ¶52, 339 Wis. 2d 78, 810 N.W.2d 787. Relying on this explanation and Dinkins' attempts to comply with the statute, the court determined that Dinkins could not be convicted for violating Wis. Stat. § 301.45(6). Id., ¶63.

¶42 As discussed above, Dinkins reached its conclusion based on Wis. Stat. § 301.45(2)(d). However, Savage was not subjected to the requirements of § 301.45(2)(d). Because he was under DOC supervision, Savage was subject to the requirements of § 301.45(2)(b). Section 301.45(2)(b) provides that "[i]f the [DOC] has supervision over a person subject to sub. (1g), the [DOC] shall enter into the registry under this section the information specified in par. (a) concerning the person." This statute does not contain the same "unable to provide" language upon which the court in Dinkins relied. Compare § 301.45(2)(b) with § 301.45(2)(d). Any hypothetical defenses formulated based upon the "unable to provide" holding in Dinkins cannot be imputed to a case dealing with a defendant who is under DOC supervision pursuant to § 301.45(2)(b). In Dinkins, we recognized this limitation of our holding. Dinkins, 339 Wis. 2d 78, ¶53 ("We emphasize that our interpretation of the statute is unlikely to apply to a large number of registrants. Typically, registrants leaving prison will be under the supervision of the DOC or the DHS."). Thus, the "unable to provide" language from Dinkins does not provide Savage with a defense to his "violation of sex offender registry" charge as he claims.

¶43 Furthermore, DOC's Administrative Directive #15-12 regarding homeless sex offender registrants undermines Savage's claim that Dinkins provides him with a defense. Prior to this court announcing its decision in Dinkins, the DOC promulgated

25

DOC Administrative Directive #11-04.[12]  Id., ¶¶53-54.  Despite it not applying to the facts in Dinkins, this court noted that "the DOC has promulgated new reporting requirements and guidelines for addressing the problem presented in this case."  Id., ¶54. This statement shows that those to whom the DOC's Administrative Directive applies, like Savage, may be outside the scope of any hypothetical Dinkins defenses.

¶44  Similarly, the factual differences between Dinkins and this case demonstrate that, even if Dinkins provided a defense, Savage would not qualify.  Dinkins' charge stemmed from "failing to provide his residence [ten] days prior to release from prison" and the circuit court found Dinkins "attempted to comply with the statute, but has been unable to find housing for himself upon release."  Id., ¶¶20-21.  In contrast, Savage was already released from prison when he was charged.  Moreover, his charge stemmed from his decision to cut off his GPS bracelet and abscond——failing to provide the DOC with updated information about where he was living within ten days of a change.  Thus, any argument that Savage is similar to the defendant in Dinkins and entitled to a similar defense fails.

¶45 Therefore, Dinkins does not provide a defense to Savage.  Savage cannot demonstrate that his trial counsel deficiently performed, and we need not address prejudice.  See Breitzman, 378 Wis. 2d 431, ¶37.  As a result, Savage cannot

---

[12] DOC Administrative Directive #11-04 was superseded by the DOC Administrative Directive #15-12 on March 1, 2015.

prove that his trial counsel provided ineffective assistance. Accordingly, we conclude that Savage failed to demonstrate manifest injustice, and the circuit court did not erroneously exercise its discretion when it denied Savage's motion to withdraw his guilty plea.

## IV. CONCLUSION

¶46 We conclude that counsel was not ineffective and Savage is not entitled to withdraw his plea post-sentencing. Savage failed to prove by clear and convincing evidence that manifest injustice merits plea withdrawal because Dinkins does not conclude that homeless sex offenders are "exempt" from registration requirements. Thus, Savage's trial counsel did not provide ineffective assistance in failing to inform Savage about Dinkins because Dinkins does not provide Savage with a defense. Accordingly, we reverse.

*By the Court.*—The decision of the court of appeals is reversed.