COURT OF APPEALS
DECISION
DATED AND FILED

July 26, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP892-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF13

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DWAUN E. FLEMING,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Winnebago County: JOHN A. JORGENSEN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dwaun E. Fleming appeals from a judgment of conviction for possession with intent to deliver cocaine as party to a crime and as a second or subsequent offense. He also appeals an order denying his postconviction motion. He argues he received constitutionally ineffective assistance from his trial counsel as a result of counsel's failure to seek the exclusion of jail telephone recordings at his trial under WIS. STAT. § 904.03 (2021-22).[1] He also argues his trial counsel should have requested an adjournment of the trial date based on the recordings' late disclosure by the State. We reject his arguments and affirm.

## BACKGROUND

¶2 Fleming was wanted on a warrant when law enforcement learned he was living at a home on Cedar Street in Oshkosh. Fleming drove away from the residence with two passengers, Tommie Roberson and Melissa Swan. Police attempted a traffic stop, but Fleming fled in the vehicle after an officer approached. After a several-mile pursuit, Fleming surrendered and was arrested.

¶3 Roberson—a minor at the time—was arrested too, and he was searched at the jail. Jail staff discovered marijuana and cocaine on Roberson's person, both of which Roberson testified belonged to Fleming. Fleming was charged with, and convicted of, possession of between one and five grams of cocaine with intent to deliver, both as party to a crime and as a second and subsequent offense.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      The appellate claims in this case focus on the circuit court's decision to receive into evidence at trial recordings of two jail telephone calls Fleming made to his brother Daquan on October 16, 2018, the day after Fleming's arrest. Portions of those recordings were introduced during the testimony of investigator Josh Turner. The phone calls—which were filled with profanity and other abrasive language—involved Fleming asking Daquan to have Swan "take her shit out of my shit." Swan and Fleming had apparently been in a relationship, and Fleming told Daquan "she can have her shit, and I'll have my shit."

¶5      Turner testified that during the call there was a reference to "12 G's," which he perceived to be either "slang terminology for 12 grams which is a common drug term that is used to describe weight" or a reference to "$12,000." Turner testified Fleming made references to putting something in a safe, and Fleming told Daquan that "he doesn't want anyone selling his shit" because he "is not going to see anything if that occurs." Turner regarded these statements as meaning that Fleming was "not going to make any money on the substance if it's sold when he is not there." Fleming also told Daquan that "if I'm taking an 'L', I'm taking off heads," which Turner interpreted as "being a threat to people that are causing him to lose either money or control over the substances that he has."

¶6      Fleming also addressed the circumstances of his arrest during the first telephone call. Turner believed Fleming was "describing what he was telling Tommie in the car" after Fleming fled the traffic stop. Fleming variously referred to saying "throw it" and "get it up out of here." Turner testified Fleming then told Daquan "something to the effect of I don't know why the fuck Tommie didn't dump—and then he stopped himself as though he was saying dump it, and then says that N-word stupid."

¶7     During Turner's cross-examination, Fleming's defense counsel asked about the second telephone call. During that call, Fleming talked to Daquan about locking up various items of personal property, including clothes and a car. When defense counsel asked whether the "12 G's" could refer to the personal property referenced during the second call, Turner responded that he did not believe so:

> [H]e's describing it as shit which leads me to believe, knowing the calls are recorded because they tell you the call is recorded when you make them, he is describing the substance [in the first call]. But he has no problem identifying in that second call his belts and his other properties are going to go into a car in a garage. So where it's an item that is not illegal, he's okay with describing what the item is, but when it's something that could be a controlled substance or monetary amount, he's hiding his words and not saying exactly what it is.

Daquan testified at trial and stated that none of Fleming's statements in the calls referenced drugs. The phone calls were the subject of considerable closing argument.

¶8     After Fleming was convicted, he filed a postconviction motion challenging trial counsel's handling of the telephone call evidence, including by asserting that trial counsel was constitutionally ineffective for failing to seek to adjourn the trial based upon the late disclosure of the recordings—which were disclosed just a few days before trial—and for failing to seek their exclusion under WIS. STAT. § 904.03. Following a *Machner* hearing,[2] the circuit court denied the motion, concluding that Fleming had neither demonstrated deficient performance

---

[2] *See **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

on the part of his trial counsel nor any prejudice stemming from the alleged deficiencies. Fleming now appeals.

## DISCUSSION

¶9      On appeal, Fleming renews his arguments that his trial counsel was constitutionally ineffective for failing to seek exclusion of the recordings based on unfair prejudice under WIS. STAT. § 904.03 and for failing to seek an adjournment based on the recordings' late disclosure. The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶10      To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also* ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. *Savage*, 395 Wis. 2d 1, ¶25.

¶11      To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated

by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. ***Id.***, ¶32.

¶12    We first address whether Fleming's trial counsel was constitutionally ineffective for failing to seek exclusion of the recordings under WIS. STAT. § 904.03. That section permits a circuit court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or similar considerations. Fleming argues the telephone calls had "virtually no probative value" as he did not explicitly reference illicit substances. From this, Fleming argues that even a minimal prejudicial effect would be sufficient to warrant the recordings' exclusion. He argues that prejudicial effect flowed from the vulgar and offensive language used during the telephone calls.

¶13    We disagree with Fleming's assessment of the recordings' probative value. Fleming's brief concedes the language used during the telephone calls "could be construed" as references to illegal substances—though he argues this is an implausible interpretation given the context of the conversations. But that assessment was for the jury to make. *See* ***State v. Smith***, 2012 WI 91, ¶30, 342 Wis. 2d 710, 817 N.W.2d 410 ("[T]he trier of fact is free to choose among conflicting inferences of the evidence and may, within the bounds of reason, *reject that inference which is consistent with the innocence of the accused*."). Because there was at least one inference available from the telephone recordings that increased the likelihood that cocaine found on Roberson belonged to Fleming, the recordings were both relevant and probative.

¶14    As for exclusion under WIS. STAT. § 904.03, we conclude Fleming's trial counsel was not constitutionally ineffective because he did make an argument

similar to what Fleming now suggests was necessary. The matter of the recently disclosed recordings was taken up on the morning of the trial. Trial counsel argued against admitting the recordings, asserting they were prejudicial and had "limited probative effect" as "there's no mention of drugs, no mention of Tommie possessing something, no mention or instruction of Tommie getting rid of anything." At the *Machner* hearing, counsel confirmed that he did not specifically cite to the statute, but he believed his statements conveyed his argument that the recordings were "both prejudicial and not relevant."

¶15 We similarly conclude trial counsel did not perform deficiently by failing to seek an adjournment based upon the recordings' late disclosure. Trial counsel testified at the *Machner* hearing that he discussed an adjournment with Fleming. According to trial counsel, Fleming "did not want an adjournment [and] continued his position of the speedy trial or prompt disposition." Additionally, counsel independently concluded an adjournment was not in Fleming's best interest, as the pending case was affecting Fleming's prison classification and eligibility for programming, and counsel believed a delay made it more likely the recordings would be admitted into evidence. Strategic determinations are entitled to great deference. *State v. Balliette*, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334.

¶16 These strategic determinations were not unreasonable or made without adequate consideration. Fleming's trial counsel testified that after the State disclosed the recordings, he spent the weekend and a Monday holiday reviewing the recordings, consulting several times with Fleming, and arranging for Daquan to testify in case he was unsuccessful in excluding the recordings on grounds of surprise or prejudice. Though trial counsel believed the recordings had

a significant effect on the trial, there is no basis on this record to conclude that counsel was constitutionally ineffective in his handling of them.[3]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Additionally, we note that Fleming has failed to demonstrate prejudice arising from his trial counsel's failure to request an adjournment. He has not explained how an adjournment would have resulted in the recordings' exclusion or allowed trial counsel to better address their effect at trial.