COURT OF APPEALS
DECISION
DATED AND FILED

August 27, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2022AP174-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF429

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

HARLEY ALLEN GARRIGAN III,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County:  TAMMY JO HOCK, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Harley Allen Garrigan III appeals a judgment, entered upon his *Alford*[1] plea, convicting him of one count of possession of child pornography. He also appeals an order denying his postconviction motion for plea withdrawal. Garrigan argues that his plea was not knowing, intelligent, and voluntary because his counsel misinformed him that he could appeal the denial of his pretrial motions to dismiss the charges against him. Garrigan also claims that his trial counsel was ineffective by misinforming him in this regard. We reject Garrigan's arguments and affirm the judgment and order.

## BACKGROUND

¶2 The State charged Garrigan with ten counts of possession of child pornography. The charges arose from an investigation that began in August 2011, when an agent from the Wisconsin Department of Justice identified an IP address in Green Bay that was offering to share videos containing child pornography via a peer-to-peer internet file-sharing network. Investigators were eventually able to trace the IP address to Garrigan's apartment. During the execution of a search warrant for Garrigan's apartment, law enforcement recovered a laptop computer with an operating system that had been deleted and reinstalled days earlier. No images of child pornography were found on the laptop at that time, but several video files containing "known child pornography" were discovered during a full forensic analysis of the laptop.

---

[1] An *Alford* plea is a guilty or no-contest plea in which the defendant either maintains innocence or does not admit to the commission of the crime. *State ex rel. Jacobus v. State*, 208 Wis. 2d 39, 45 n.5, 559 N.W.2d 900 (1997); *see also North Carolina v. Alford*, 400 U.S. 25 (1970).

¶3 Relevant to this appeal, Garrigan filed pretrial motions to dismiss based on: (1) the roughly five-year delay between the execution of the search warrant and the State filing charges; and (2) the State's alleged inability to prove that Garrigan knowingly possessed child pornography during the relevant time periods. At a hearing on the first motion, the circuit court acknowledged that a defendant seeking dismissal based on pre-charging delay must show both that he or she suffered actual prejudice because of the delay and that the delay "arose from an improper notice or purpose such as to gain a tactical advantage" over the defendant. *See State v. Wilson*, 149 Wis. 2d 878, 904-05, 440 N.W.2d 534 (1989). The court denied the motion, concluding that Garrigan failed to satisfy either criteria.

¶4 With respect to his other motion to dismiss, Garrigan argued that although child pornography was found on his computer, he could not have possessed it because it was found in the "unallocated space" of the computer, which cannot be accessed without forensic software. At a motion hearing, a forensic analyst explained that unallocated space is the area on a hard drive where new files can be stored, while allocated space is the area where files already reside. The analyst further explained that when a file is deleted from a computer, it does not "go away." Rather, the space that contained the file "just becomes available space for the computer to save new files," i.e., it goes from allocated space to unallocated space. The analyst found "over 100" video clips of "confirmed" child pornography in the computer's unallocated space. The analyst testified that because the unallocated space of Garrigan's computer contained video clips of child pornography, those clips were once saved to the computer's allocated space. The analyst added that a comparison of the file-sharing network's download report containing Garrigan's IP address with the files and text data contained on Garrigan's computer would show when the child pornography videos were downloaded to Garrigan's computer. The

3

circuit court denied Garrigan's motion, concluding that the State met its burden to show "sufficient evidence" that Garrigan could have possessed child pornography during the charged period.

¶5    After consulting with his own forensic computer expert, Garrigan entered into a plea agreement with the State. In exchange for his *Alford* plea to one count of possessing child pornography, the State agreed to recommend that the circuit court dismiss and read in the remaining counts. The court imposed a seven-year sentence, consisting of three years of initial confinement followed by four years of extended supervision.

¶6    Garrigan filed a postconviction motion for plea withdrawal, alleging that his *Alford* plea was not knowing, intelligent, and voluntary because he misunderstood his appellate rights. Specifically, Garrigan claimed that his trial counsel misinformed him that he could appeal "anything" when, in fact, the guilty-plea-waiver rule barred him from raising most issues.[2] Garrigan also argued that his trial counsel was ineffective for "misadvising" him that his *Alford* plea did not prohibit him from appealing the denial of his pretrial motions to dismiss.[3] Garrigan

---

[2] "The general rule is that a guilty, no contest, or *Alford* plea 'waives all nonjurisdictional defects, including constitutional claims[.]'" ***State v. Kelty***, 2006 WI 101, ¶18, 294 Wis. 2d 62, 716 N.W.2d 886 (alterations in original; footnote omitted; citation omitted). WISCONSIN STAT. § 971.31(10) (2021-22) provides an exception to the guilty-plea-waiver rule for orders "denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant," but that exception does not apply here.

[3] The postconviction motion also alleged that Garrigan's trial counsel was ineffective by failing to timely notify Garrigan that a new judge had been assigned to the case, thus preventing Garrigan from exercising his right to substitution of the judge. The circuit court rejected this ineffective assistance claim, and Garrigan does not challenge that ruling on appeal. Therefore, we deem this claim abandoned. *See ****A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (holding that issues raised before the circuit court but not raised on appeal are deemed abandoned).

claimed that he would not have entered an *Alford* plea had he known that his plea would bar him from appealing the denial of his pretrial motions. Garrigan's plea withdrawal motion was denied after a *Machner*[4] hearing, and this appeal follows.

## DISCUSSION

¶7      A defendant seeking to withdraw a plea after sentencing on grounds other than a defective plea colloquy must demonstrate by clear and convincing evidence that refusal to allow plea withdrawal would result in a "manifest injustice," raising "serious questions affecting the fundamental integrity of the plea." *State v. Dillard*, 2014 WI 123, ¶83, 358 Wis. 2d 543, 859 N.W.2d 44 (citation omitted). A defendant may establish the existence of manifest injustice in several ways. *Id.*, ¶37. As relevant here, a defendant may demonstrate manifest injustice by showing that his or her plea was not knowing, intelligent, and voluntary or by showing that his or her trial attorney was constitutionally ineffective. *See id.*, ¶¶37, 84. Both of those inquiries present questions of constitutional fact. *Id.*, ¶¶38, 86. As such, under both inquiries, we will uphold the circuit court's factual findings unless they are clearly erroneous, but we independently review the application of constitutional principles to the facts. *See id.*

¶8      "[A]ffirmative misinformation about the law provided by the prosecutor and defense counsel can support a holding that withdrawal of a plea of guilty or no contest must be permitted because the plea is uninformed and its voluntariness is compromised." *Id.*, ¶39. To determine whether misinformation warrants plea withdrawal, a court must review the totality of the circumstances, including the record of the postconviction hearing. *Id.*, ¶40. A defendant is entitled

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

to plea withdrawal based on misinformation that he or she received if the defendant presents a "persuasive account" of why, absent the misinformation, he or she would not have entered a plea and would have instead gone to trial. *Id.*, ¶52.

¶9　On appeal, Garrigan argues that his plea was not knowingly, intelligently, and voluntarily entered because he was misinformed about his ability to appeal the denial of his pretrial motions. He also contends that his "mis-advice-based misunderstanding was his key motivation for accepting the State's plea offer." At the *Machner* hearing, trial counsel acknowledged sending Garrigan a letter describing, in part, what would happen if Garrigan accepted the plea deal. The letter included the statement: "I believe you could still appeal the prior rulings from the [c]ourt on the motions previously filed by the defense." In the same letter, trial counsel also informed Garrigan that if he accepted the plea deal, his exposure to custody time would be substantially reduced, as he faced the possibility of consecutive sentences if he was ultimately convicted on multiple counts. Trial counsel added that there was a "substantial risk" of a conviction at trial because the jury would be shown "the child pornographic images" and there would be testimony about such searches on Garrigan's computer.

¶10　In turn, Garrigan testified that although there were a number of factors that led him to enter an *Alford* plea, trial counsel's assurance that he could still appeal the denial of his pretrial motions was "the deciding factor." The circuit court, however, implicitly found this claim to be incredible. *See State v. Quarzenski*, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844 (stating that when a court fails to make express credibility findings, "we assume it made implicit findings on a witness's credibility when analyzing the evidence"); *see also State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 (holding that, when acting as fact finder, the circuit court is the ultimate arbiter of

6

witness credibility and of the weight to be given to their testimony). The court determined that, taken together, the testimony of Garrigan and trial counsel, along with counsel's letter, suggest that the focus of their discussions was on trial issues and the plea deal—not on appeals. Simply claiming that the misinformation was the deciding factor does not make it so.

¶11     Garrigan nevertheless contends that he is entitled to plea withdrawal under the holdings of both *Dillard* and *State v. Riekkoff*, 112 Wis. 2d 119, 332 N.W.2d 744 (1983). We disagree, as both cases are materially distinguishable on their facts.

¶12     In *Dillard*, the parties and the circuit court proceeded with a plea hearing under the mistaken belief that a persistent repeater enhancer applied to a charged offense and the defendant could have faced a mandatory life sentence had he not accepted the State's plea offer. *Dillard*, 358 Wis. 2d 543, ¶6. Dillard's counsel testified that "the dropped persistent repeater enhancer [was] 'the most significant factor' contributing to [Dillard's] decision" to plead. *Id.*, ¶54. In concluding that Dillard's plea was not knowing, intelligent, and voluntary, our supreme court determined that because the enhancer was a legal impossibility, the State's offer to drop the enhancer provided an illusory benefit to Dillard. *Id.*, ¶79. Here, nothing in the terms of the plea offer itself created an illusory benefit to Garrigan, and to the extent he claims that misinformation from his counsel was the deciding factor in accepting the plea offer, the record, as discussed above, does not support this assertion.

¶13     In *Riekkoff*, the defendant and the State structured the plea agreement so that Riekkoff could preserve an evidentiary issue on appeal, and the circuit court accepted the plea with that understanding. *Riekkoff*, 112 Wis. 2d at 121-22. In

7

concluding that Riekkoff's plea was "neither knowing nor voluntary," our supreme court stated, "One thing … clearly stands out from the record, and that is that Riekkoff pleaded guilty believing that he was entitled to an appellate review of the reserved issue." *Id.* at 128. Here, in contrast to *Riekkoff*, Garrigan's plea was not structured to allow him the ability to challenge the denial of his pretrial motions, nor does the record establish that misinformation about his appeal rights was a "deciding factor" in entering the plea agreement.

¶14 Looking at the totality of the circumstances, we conclude that Garrigan failed to present a "persuasive account" of why, absent the misinformation, he would not have entered a plea and would have instead gone to trial, especially in light of trial counsel's assessment of the strength of the State's case, the favorable plea deal, and the maximum possible 250-year sentence exposure he was avoiding. Because Garrigan failed to establish that his plea was not knowingly, voluntarily, and intelligently entered, the circuit court properly determined he was not entitled to plea withdrawal on this basis.

¶15 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To prove prejudice, a defendant seeking to withdraw his or her plea must establish a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996). A defendant, however, must do more than merely allege that he or she would have pleaded differently but for the alleged deficient performance. *State v. Hampton*, 2004 WI 107, ¶60, 274 Wis. 2d 379,

683 N.W.2d 14.  The defendant must support that allegation with "objective factual assertions."  *Id.* (citation omitted).  If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other.  *Strickland*, 466 U.S. at 697.

¶16    Garrigan argues that his trial counsel performed deficiently by misinforming him about his ability to challenge the denial of his pretrial motions on appeal.  Although Garrigan's trial counsel could be deemed deficient for misinforming Garrigan in this regard, we are not persuaded that Garrigan was prejudiced by this deficiency.  The State argues that Garrigan cannot establish prejudice because the evidence against him was overwhelming.

¶17    As Garrigan points out, however, "there is more to consider than simply likelihood of success at trial."  *See Lee v. United States*, 582 U.S. 357, 367 (2017).  "The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea."  *Id.*  In determining whether a defendant would have insisted on going to trial but for counsel's error, we focus "on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial."  *Id.*  The *Lee* Court further explained:

> A defendant without any viable defense will be highly likely to lose at trial.  And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial.  But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake.  It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea.

*Id.*  As this passage indicates, while generally a defendant will change his or her plea only if there is a reasonable probability of success on the merits, there may be

other particularized circumstances that may cause the defendant to change his or her plea.

¶18     The *Lee* Court added that, "[a]s a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his [or her] burden of showing prejudice from accepting a guilty plea." *Id.* at 366-67. Further, the Court stated that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he [or she] would have pleaded but for his [or her] attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 369.

¶19     Therefore, "to show prejudice from accepting a plea, the defendant has two independently sufficient options to prove that he or she would have not pleaded guilty and would have instead proceeded to trial." *State v. Savage*, 2020 WI 93, ¶35, 395 Wis. 2d 1, 951 N.W.2d 838. First, a defendant can demonstrate, based on "contemporaneous evidence," that counsel's deficient performance so offended "expressed preferences" that the defendant would not have pleaded guilty. *Id.* (citation omitted). Second, the defendant can demonstrate that the defense would have likely succeeded at trial. *Id.*

¶20     Garrigan argues that he was committed to pursuing certain issues on appeal after raising them unsuccessfully at the trial level and, therefore, it is "reasonably probable that commitment would have led him to trial had he known about the guilty-plea-waiver rule." Garrigan's post hoc claim that he would have gone to trial but for trial counsel's misinformation is not supported by any contemporaneous evidence of the same. As the circuit court noted in its decision

denying Garrigan's postconviction motion, the focus of discussions between Garrigan and his attorney was on trial issues and the plea deal—not on appeals.

¶21 As the State alleges, over 100 video clips of confirmed child pornography were found in the unallocated space of Garrigan's computer. The State further alleges that by comparing the file-sharing network's download report with the files and text data contained on Garrigan's computer, agents could determine when the child pornography videos were downloaded to Garrigan's computer. According to the State, it could also show that Garrigan did not accidentally download child pornography onto his computer, as a forensic analysis revealed that Garrigan searched the internet using the key word "Lolita," which is associated with child pornography. Garrigan's trial counsel advised him in a letter days before trial that there was a "substantial risk" of conviction if he proceeded to trial because the jury would be shown the child pornographic images and there would be testimony about the "Lolita searches" on his computer. In fact, at the plea hearing, Garrigan agreed that by entering an *Alford* plea, he was conceding that the State had strong evidence of guilt against him.

¶22 Given the absence of contemporaneous evidence to support Garrigan's claim that he would have proceeded to trial but for his trial counsel's deficiency, combined with the evidence of his guilt and the benefits of his plea, we are not persuaded that Garrigan has demonstrated prejudice. Therefore, we conclude the circuit court properly determined that Garrigan was not entitled to plea withdrawal on the basis of ineffective assistance of trial counsel.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).