COURT OF APPEALS
DECISION
DATED AND FILED

February 9, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP887-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF265

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

ANTHONY J. KUDEK,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Washington County: TODD K. MARTENS, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Anthony J. Kudek appeals a judgment of conviction for first-degree reckless homicide and felony bail jumping. He also appeals an order denying his postconviction motion, in which he sought a new trial. On appeal, Kudek alleges various instances of ineffective assistance of trial counsel, seeks a new trial based on allegedly improper closing argument by the prosecutor, and requests that we invoke our discretionary reversal authority because the real controversy was not fully tried. We conclude Kudek's trial counsel did not provide constitutionally deficient performance, the prosecutor's closing arguments do not constitute reversible error, and the exercise of our discretionary reversal authority is not warranted. We affirm.

## BACKGROUND

¶2     Kimberly Landon was found deceased of a drug overdose in her father's home in West Bend on the afternoon of May 17, 2016. She had arrived in Wisconsin from Florida on May 14, 2016, and had no money, no car, and no cellular telephone service; she communicated with others using Facebook messenger over a Wi-Fi connection.

¶3     The trial evidence established that Landon's friend Jacob Cimbalnik picked her up from her father's residence on the evening of May 16, 2016. She appeared in good health at that time. While Landon was present at Cimbalnik's home, none of the witnesses who testified at trial provided drugs to Landon or saw Landon use drugs. Landon's family testified she arrived back at her father's residence in the early morning hours of May 17. She was seen in her bedroom at approximately 5:45 a.m., laying in the same position in which she was later found deceased.

¶4    After being confronted with data from telephone and internet service providers, Kudek eventually admitted to a detective that he had picked up Landon near Cimbalnik's home in Brookfield at approximately 9:45 p.m. on May 16. He then arranged to purchase $30 or $40 of crack cocaine from his dealer, and the pair traveled to Milwaukee where he made the drug transaction. Afterwards, he and Landon smoked the crack cocaine on their way to Kewaskum.

¶5    Kudek told the detective they parked in Kewaskum for a few hours until they ran out of cocaine, then Kudek called his dealer to arrange another purchase. At around 1:00 a.m., he and Landon traveled back to Milwaukee, where Kudek purchased another $60 of crack cocaine. He also provided those drugs to Landon and they smoked the crack cocaine on their way back to West Bend and while parked outside her father's house. Kudek said he dropped Landon off between 2:30 and 3:00 a.m., at which time she appeared "zipped"—i.e., very high.

¶6    Kudek was charged with first-degree reckless homicide and felony bail jumping. The dispute at trial turned on whether the crack cocaine Kudek had provided to Landon was a substantial factor in causing her death. Doctor Zelda Okia, who performed the autopsy on Landon's body, and Doctor Christopher Long, who performed a toxicological analysis of her tissues, testified that Landon died as a result of mixed drug intoxication involving heroin and cocaine.

¶7    Long opined that, based upon the amount of morphine in Landon's system, it appeared she "had been doing a lot of heroin earlier and then stopped and it metabolized out of her system down to .1 grams per mill [of active morphine]. So it's easily multiple hours earlier." Long noted that heroin alters the body's chemistry, and he identified the heroin as a "contributing factor" in

Landon's death. Long's analysis also showed large amounts of parent cocaine in Landon's urine and a small amount in her blood.[1] Based on those results, Long concluded Landon's body was engaging in "massive elimination of the cocaine in the blood." He opined that the last dose of cocaine occurred at or near the time of her death and that the cocaine was the substantial factor in Landon's death. Put another way, Long testified that "if she had not had the cocaine, it's more likely than not she would have survived."

¶8 Doctor Susan Rice, the defense's toxicology expert, testified that based on the results of a nasal swab analysis, she believed Landon had snorted, not smoked, cocaine shortly before her death. She further opined that, based on the results of Long's testing, she did not believe cocaine was a substantial factor in Landon's death. Her conclusion was based on her belief that Long used inaccurate half-lives for the drugs in Landon's system. Using the drug levels found in Landon's tissues, she performed various calculations to estimate the quantity of drugs that might have been present at the time of Landon's death. She ultimately found no basis for preferring a scenario in which the cocaine levels were sufficient to cause Landon's death.

¶9 The jury convicted Kudek of both offenses and he filed a postconviction motion seeking a new trial.[2] As relevant here, Kudek asserted that his trial counsel was constitutionally ineffective for failing to present evidence of a

---

[1] Long testified that a "parent" drug is distinguishable from the metabolites that are present after the body's enzymes break down the substance. In this case, the presence of the parent drug—cocaine—in Landon's tissues led Long to conclude that death occurred soon after ingestion.

[2] Kudek's arguments on appeal are primarily directed at his conviction for reckless homicide. Accordingly, our analysis addresses only that offense.

possible alternate source for the drugs that caused Landon's death, for failing to impeach Okia and Long with their prior statements relating to whether the heroin levels found in Landon's body were fatal, for failing to impeach Cimbalnik with his prior criminal convictions, and for failing to object to the prosecutor's allegedly improper closing argument. Kudek additionally alleged prosecutorial misconduct in connection with the closing argument and that the real controversy was not fully tried. The circuit court rejected these arguments following an evidentiary hearing at which Kudek's trial counsel testified. Kudek now appeals.

## DISCUSSION

¶10 Kudek's appellate arguments fall within three categories. First, he argues he received constitutionally ineffective assistance from his trial attorney for various reasons. Second, he argues certain of the prosecutor's closing arguments asked the jury to draw an inference that the prosecutor knew was false, constituting prosecutorial misconduct. Third and finally, Kudek requests that we invoke our discretionary reversal authority because the real controversy was not fully tried. We reject each of these arguments.

*I. Ineffective Assistance of Counsel*

¶11 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo

whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.*

¶12 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

A. *Failure to Present Evidence of Alternative Sources for the Drugs*

¶13 Kudek first argues that his trial counsel was ineffective for failing to present critical evidence favorable to Kudek. The evidence consisted of testimony establishing that Landon knew individuals other than Kudek who may have provided her with drugs in the past, including Kayla Oliver and Oliver's boyfriend. Kudek also argues his trial counsel was ineffective for failing to subpoena Oliver for the trial.

¶14 We note that prior to trial, the parties litigated a motion in limine regarding whether evidence of Landon's drug use prior to May 16, 2016, would be allowed at trial. Based upon the expert reports prepared at that time, the circuit court concluded that no such evidence regarding cocaine use would be permitted because it was undisputed that cocaine use prior to May 16, 2016, could not have

contributed to Landon's death. At trial, that ruling was expanded to heroin.[3] Each time, trial counsel opposed the State's request to exclude the evidence.

¶15    Kudek argues that trial counsel was deficient for failing to present evidence, both in opposition to the motion in limine and at trial, that Landon had other sources for drugs besides Kudek. Kudek argues such evidence would have been relevant because it was possible that someone provided Landon with drugs in the days preceding her death, which she only consumed on the morning of May 17 after leaving Kudek. In particular, Kudek faults his trial counsel for not presenting "concrete evidence that [Landon] obtained heroin and crack cocaine from Oliver on May 15."

¶16    We conclude Kudek's trial counsel was not constitutionally deficient in opposing the State's motion in limine. Based on trial counsel's statements during the motion hearing, it should have been apparent to the circuit court that Landon had used drugs with individuals other than Kudek in the days preceding her death. The additional fact that Landon had used drugs specifically with Oliver would have added nothing to trial counsel's argument. Nor would it have undercut the court's rationale for excluding the evidence, which was that drug use prior to May 16 could not have contributed to Landon's death. The same result obtains regarding the identification by family members of other individuals whom they suspected of providing drugs to Landon in the past.

---

[3] The basis for these rulings was relevance; the circuit court concluded the issue at trial was not whether Landon was a habitual drug user, but rather whether the drugs Kudek had supplied her were a substantial factor in her death.

¶17 We also conclude trial counsel was not deficient for failing to pursue a defense that someone else had earlier provided drugs to Landon that she used after leaving Kudek. At the *Machner*[4] hearing, trial counsel testified that her strategy involved challenging the State on the element requiring proof that the drugs Kudek provided were a substantial factor in Landon's death. Focusing on the causation element in this fashion did not require Kudek's trial counsel to demonstrate that someone else had given Landon the drugs that caused her death, although she testified she would "not have minded the Jury making that inference."

¶18 Trial counsel was aware that Oliver had provided heroin and cocaine to Landon on May 15. She also knew that Landon had drug contacts other than Kudek. Nonetheless, counsel testified that she had strategic reasons for not pursuing an alternative-source defense:

> I contacted attorneys who represented Defendants. I contacted a Judge who has heard these types of cases and also looked at various case files that included Washington County, Ozaukee County and Fond du Lac County.
>
> I will tell you that I very quickly found out that Defense Counsel was not having an easy time in coming up with favorable verdicts for Defendants like Mr. Kudek. And that was concerning to me.
>
> When I vetted the cases that I vetted and spoke to the people that I spoke to, generally the defense was that drugs were provided by somebody else. And, unfortunately, the verdicts were just not showing any positive results.
>
> I really did feel that there needed to be a different approach to this particular case and discussed that with the family. I told them that I thought we needed to hire an

---

[4] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

expert. And the family was very receptive to that idea and also was able to come up with the funds to be able to do that.

¶19 We give great deference to trial counsel's decisions in choosing a trial strategy. *See State v. Balliette*, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Kudek argues that "[n]o prudent lawyer would have based their decision on forming their theory of the defense of a case based on another lawyer's success or failure in using the same defense." Kudek compares this case to one in which the defendant could present an alibi defense, asserting that no prudent lawyer would reject an alibi defense for his or her client based on the fact that it did not work for another defendant.

¶20 We are not persuaded by Kudek's analogy to alibi cases. Kudek's admissions to police contained facts establishing all but the causation element of his guilt. Trial counsel was an experienced criminal defense attorney but had never tried a reckless homicide case. As such, it was entirely reasonable for her to consult other practitioners and explore the general success rate of alternate-source defenses within the geographic area from which the jury would be selected.

¶21 His trial counsel's decision not to pursue an alternative-source defense was particularly reasonable given the lack of any compelling evidentiary basis for such an argument. Kudek cites no evidence tending to demonstrate that

9

Landon was already in possession of cocaine at the time he picked her up.[5] Nor does Kudek cite evidence suggesting Landon had contacted someone else to obtain drugs after leaving him on May 17.

¶22 Moreover, trial counsel testified she had no evidence suggesting that Landon had used drugs with any other individuals on May 16 and 17. Oliver was with Landon between 12:00 p.m. on May 14 and 4:00 p.m. on May 15, and she told police that during that period Landon had not obtained drugs from anyone other than her. Oliver also told police that Landon did not have any contact information for drug dealers in Wisconsin, so she had others, including Oliver, procure the drugs for her.[6]

¶23 Kudek argues Oliver's admitted provision of drugs to Landon is relevant because it was possible Landon consumed those drugs at a later date. To the contrary, Oliver told police that she and Landon used all the drugs they had prior to Landon's departure. Assuming Oliver testified consistently with her statements to police, her testimony would have been of minimal assistance to Kudek's defense—the jury would have had to conclude that Oliver was lying, that

---

[5] By contrast, Kudek had told police Landon was in possession of a vial of heroin at the time she entered his vehicle—contradicting a prior statement in which Kudek said Landon had no heroin in her possession. Although it was undisputed that heroin was present in Landon's body at the time of her death and that a vial of heroin was discovered on her person during the autopsy, trial counsel elected not to pursue a theory that Landon had died of opiates provided by someone else. Based on the discovery—presumably including Kudek's admission to police that his DNA would be found on the vial of heroin—trial counsel testified she was "pleasantly surprised" that the State had not attempted to charge Kudek with also supplying the heroin, and she wished not to invite an amendment to the pleadings. Trial counsel believed the cursory manner in which the heroin was addressed at trial left her client in a favorable position.

[6] After messaging Kudek suggesting that they do "something stupid," Landon asked if he knew anyone to "hit up" because she did not have "any numbers." Thus, Landon's own text messages support Oliver's statements that Landon had limited ability to obtain drugs on her own behalf.

Landon had kept some of the drugs Oliver provided, and that Landon had used them after meeting Kudek in a fashion that precluded his liability under WIS. STAT. § 940.02(2)(a) (2019-20).[7] Accordingly, Kudek's trial counsel did not perform deficiently by failing to pursue a defense at trial involving the drugs Oliver provided approximately two days before Landon's death.

### B. Failure to Impeach Witnesses

¶24 Next, Kudek argues his trial counsel failed to adequately impeach Doctors Okia's and Long's testimony about Landon's cause of death. He also asserts his trial counsel's cross-examination of Jacob Cimbalnik was inadequate. We reject these arguments for the following reasons.

### 1. Doctor Okia

¶25 Kudek argues his trial counsel was deficient for failing to cross-examine Okia with her statements to an investigating detective. The statements in question were made on May 18, and Okia clearly framed them as her initial findings based on the autopsy and information from law enforcement. She told the detective that Landon's death appeared "consistent with an opiate drug overdose," but she also said she would "not make a final determination on [the cause of death] until the completion of a full toxicology testing and autopsy analysis."

¶26 We cannot conclude trial counsel's decision not to confront Okia with her preliminary findings constituted deficient performance under the circumstances here. The statement regarding the preliminary findings contained a

---

[7] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

11

cautionary admonition that they were contingent upon a full toxicological analysis. Contrary to Kudek's arguments, this prior statement hardly represents a conclusive stance that Landon died of a heroin overdose. Moreover, trial counsel testified at the ***Machner*** hearing that she did not confront Okia with her preliminary findings because she did not want Okia to have an opportunity to "back off" of them, as it was evident Okia would have "very good responses" to such questioning.[8]

### 2. *Doctor Long*

¶27 Kudek likewise argues his trial counsel should have cross-examined Long with information contained in a police report. According to the report, on July 12, 2016, the prosecutor told the investigating detective that she had recently spoken with Long. Long told the prosecutor that his medical opinion was that both the level of cocaine and the level of heroin found in Landon's body were independently fatal.

¶28 Long was not cross-examined with this prior statement at trial. Kudek's trial counsel acknowledged Long's July 2016 opinion was inconsistent with his trial testimony. Trial counsel testified that Long was an "excellent expert" for the State and she needed to "get him off the stand." She believed Long did not know "anything more than our expert did, but he sure had the gift of gab and a silver tongue." She also did not believe that confronting Long with his prior statement would materially benefit the defense she elected to pursue. Contrasted

---

[8] Kudek notes that his trial counsel mistakenly believed that she had mentioned Okia's preliminary findings during closing arguments. Even if she had mentioned the findings at that time, Kudek accurately points out that closing arguments do not constitute evidence. However, Okia's preliminary findings were of such little persuasive value that even if counsel was arguably deficient for failing to introduce them into evidence, Kudek has failed to demonstrate prejudice.

against this limited benefit, trial counsel believed there was peril in asking Long questions to which she did not know his answers.

¶29    Kudek has failed to demonstrate that trial counsel's decision not to cross-examine Long with his prior statement constituted ineffective assistance of counsel.  Her defense strategy was not predicated on proving that heroin rather than cocaine caused Landon's death.  Against this backdrop, trial counsel reasonably concluded that the risk of inviting an unknown response from Long about his prior statement outweighed any potential benefit to Kudek.[9] Furthermore, Kudek did not call Long as a witness at the ***Machner*** hearing, so even now it is unclear whether Long's response to questioning about his prior statement would have been helpful in any fashion to Kudek.

### 3.  Jacob Cimbalnik

¶30    Kudek claims his trial counsel was constitutionally ineffective in her cross-examination of Jacob Cimbalnik.  He argues trial counsel should have established at trial that Cimbalnik had previously been in a relationship with Landon and that Landon's family thought he might have been a source of drugs for her.  He also argues trial counsel should have impeached Cimbalnik by establishing that he had been convicted of crimes on four occasions.  Kudek asserts that he was prejudiced by these failures because Cimbalnik was the last person to see Landon before Kudek, and his credibility should have been called into question because Landon's family believed he might have provided drugs to her.

---

[9]  To this point, Long's statement to the prosecutor appears to have been made before his final report, which was dated September 1, 2016.

13

¶31     We conclude trial counsel was not deficient on the grounds raised by Kudek.  Trial counsel testified that Cimbalnik was a "non-witness" for her theory of the case.  To the extent Kudek is suggesting that trial counsel should have posited Cimbalnik as an alternate source for the drugs that killed Landon, that was not the strategy defense counsel selected and Kudek points to nothing in the appellate record that would substantiate such a claim.  Cimbalnik testified that he had not provided her with any drugs while he was with her, nor did he see anyone else provide her with drugs.

¶32     The only basis Kudek cites for his apparent belief that Cimbalnik could have provided the drugs in question are some statements by Landon's family members in the immediate aftermath of her death identifying Cimbalnik as a potential source for drugs.  Contrary to these speculative statements, Cimbalnik told law enforcement that he did not approve of drug use and that he had broken off a romantic relationship with Landon because she refused to stop using.  Although Kudek suggests that confronting Cimbalnik with the statements of Landon's family members would have cast doubt on Cimbalnik's credibility, he ignores that another witness who was with Landon and Cimbalnik corroborated Cimbalnik's testimony about not providing Landon with drugs on May 16 or seeing her use any.  As a result, we cannot conclude Kudek's trial counsel was deficient in her cross-examination.

## II. Improper Closing Argument

¶33     Kudek next challenges certain comments the prosecutor made during closing argument.  Specifically, the prosecutor argued that Landon had "no drug contacts herself," there was "no evidence that she obtained drugs from anyone other than Kudek," and Kudek was "the only mechanism" Landon had to obtain

drugs. Kudek argues these arguments were inappropriate and false because, in fact, the prosecutor knew that Landon had obtained drugs from Oliver between May 14 and 15.

¶34 Counsel is given considerable latitude in closing arguments. *State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166. A prosecutor is allowed to recite the evidence, comment upon it, argue a conclusion and state that he or she finds the evidence convincing. *Id.* Because the prosecutor should aim to analyze the evidence and present jurors with a reasonable interpretation of the facts, it is impermissible for the prosecutor to suggest a jury reach its verdict by considering facts not in evidence. *Id.* We review a circuit court's decision about the propriety of closing arguments for an erroneous exercise of discretion.[10] *Id.*

¶35 Having reviewed the entire trial transcript, *see State v. Bvocik*, 2010 WI App 49, ¶13, 324 Wis. 2d 352, 781 N.W.2d 719, we agree with the State that a new trial is not warranted. The challenged statements were fair commentary on the evidence adduced at trial, which generally supported the notion that Landon relied on others to procure drugs for her. As previously stated, Kudek has failed to demonstrate any basis to conclude the drugs Oliver provided between May 14 and 15 were a substantial cause of Landon's death on May 17. He has also failed to demonstrate any basis to conclude that Landon had communicated with anyone

---

[10] As the State notes, here Kudek's trial counsel did not contemporaneously object to the allegedly improper closing argument, and therefore the circuit court did not have the opportunity to make a ruling on the propriety of the closing argument until Kudek brought his postconviction motion. The State therefore urges that we review the issue only through the lens of ineffective assistance of counsel, which Kudek presents as an alternative argument. Our election to reject Kudek's assertions regarding the closing argument on their merits necessarily operates as a rejection of his ineffective assistance of counsel claim. *See State v. Ndina*, 2009 WI 21, ¶23 n.4, 315 Wis. 2d 653, 761 N.W.2d 612.

else on May 16 and 17 in an effort to obtain drugs. Absent any evidence to the contrary, the prosecutor's statements cannot be viewed as inaccurate or unfair.

¶36     Kudek relies on *Bvocik*, arguing the prosecutor here effectively made knowingly false representations to the jury. In *Bvocik*, the prosecutor "took a fact that it knew to be true … and asked the jury to infer" that the fact "was quite possibly false," thereby allowing the jury "the freedom to entertain a factual conclusion that should never have been part of the jury's calculus" in deciding whether the defendant was guilty. *Id.*, ¶15. In Kudek's case, the issue at trial was not whether Landon had previously used drugs or knew individuals who could provide her with drugs; the question was whether the cocaine Kudek undisputedly delivered to Landon was a substantial factor in her death. Because the trial transcript demonstrates that the only time period relevant to that consideration was May 16 and 17, the prosecutor's challenged statements were within the bounds of fair argument. Put another way, even if it was possible as a general matter for Landon to have obtained drugs from alternate sources, there was no evidence suggesting that she had obtained drugs from anyone else that could have contributed to her death.

## III. Discretionary Reversal Under WIS. STAT. § 752.35

¶37     Lastly, Kudek requests that we exercise our power of discretionary reversal to order a new trial because, given the foregoing alleged errors, the real controversy was not fully tried. We exercise our power of discretionary reversal under WIS. STAT. § 752.35 sparingly and only in exceptional cases. *State v. Schutte*, 2006 WI App 135, ¶62, 295 Wis. 2d 256, 720 N.W.2d 469. A new trial under § 752.35 is not warranted when the request is based on contentions we have already rejected. *State v. Arredondo*, 2004 WI App 7, ¶56, 269 Wis. 2d 369, 674

N.W.2d 647. Based on the record before us, we conclude that Kudek received a fair trial on the issue of his culpability for Landon's death.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.