COURT OF APPEALS
DECISION
DATED AND FILED

August 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP134-CR**

Cir. Ct. No. **2019CF29**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TIMOTHY SCOTT COCHERELL,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Timothy Scott Cocherell appeals from a judgment convicting him, following a jury trial, of incest with a child by a stepparent and

repeated sexual assault of the same child. He also appeals from an order denying his postconviction motion for a new trial. On appeal, Cocherell renews his argument from his postconviction motion that his defense counsel provided constitutionally ineffective assistance at trial. He also asks this court to order a new trial in the interest of justice. For the following reasons, we affirm.

## BACKGROUND

¶2 The State charged Cocherell with one count each of incest with a child by a stepparent and repeated sexual assault of the same child (at least three of the assaults were second-degree sexual assault), alleging that Cocherell had regularly sexually assaulted Nadia[1] over the course of several years. The case eventually proceeded to a three-day jury trial at which a number of individuals testified, including the investigating officer, Sergeant Peter Rud; Nadia; and Cocherell.

¶3 Rud testified that he interviewed Nadia after she called the police department asking how to report a sexual assault. Nadia, then 18 years old, informed Rud that Cocherell had sexually assaulted her over the course of several years, beginning when she was 12 or 13 years old, with the most recent sexual assault occurring approximately 1 year prior. Rud testified to his subsequent investigation into the assaults.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we refer to the victim and her boyfriend's mother in this case using pseudonyms.

All references to the Wisconsin Statutes are to the 2023-24 version.

¶4     On cross-examination, defense counsel elicited responses from Rud questioning the thoroughness of his investigation into Nadia's allegations, including why Rud did not record his initial interview with Nadia; how recording the initial interview could have demonstrated discrepancies with Nadia's allegations; how Rud never questioned Nadia about the length of time it took her to come forward; and why Rud did not interview Nadia's friends, her extended family, or school officials about the allegations.  Rud conceded that aspects of the investigation were "sloppy."  Rud further testified that he would have interviewed other individuals if Nadia "had given me people I should talk to" but that "[s]he didn't do that until later."

¶5     Defense counsel also questioned Rud about whether he asked Nadia "any sort of tough questions … to kind of question her story" or whether he "just ask[ed] her to tell her story and took it … as being the whole story."  Rud responded that he "did not find at any point that [Nadia] seemed deceptive or like she was lying."

¶6     In addition, defense counsel asked Rud if he had concerns during his investigation regarding Nadia's mental health or mental capacity, given that she was in an inpatient treatment program and had met with a therapist, to which Rud stated, "Again, I found the victim to be very believable and consistent in her story."  Rud repeated similar statements shortly thereafter, upon defense counsel asking him about alleged discrepancies in Nadia's recollection of the sexual assaults and about Rud's interviewing techniques.  On redirect examination, the State asked Rud whether it is his "job to assess credibility of individuals" and whether Rud used his "training and experience to guide [him] through this investigation."  Rud answered in the affirmative to both questions.

¶7    During the State's case-in-chief, the State introduced multiple messages Cocherell sent to Nadia and Nadia's boyfriend's mother, Jennifer. Of relevance on appeal, the State introduced two messages that Cocherell sent Nadia after she accused Cocherell of sexual assault. In the first message, Cocherell stated that he "went after the phone[2] when I knew you [would] pull something like this hell I won't even touch you with that loser [Nadia's boyfriend's] dick plus I'm going to send him to small claims for the damage you two did to my windows." In the second message, Cocherell stated, "[M]y sister's [sic] want to beat the hell of out of you for your lies."

¶8    Further, the State introduced messages that Cocherell sent to Jennifer. In one of the messages, which Cocherell sent before Nadia reported the sexual assaults to law enforcement, Cocherell informed Jennifer that Nadia and Jennifer's son were dating, that Nadia snuck out of the house to be with Jennifer's son, and that Cocherell thought Nadia had "went off to harm herself" because she "has a history of self harming." Cocherell also stated to Jennifer that Nadia had previously taken his vehicle without permission and that she did not have a driver's license. In addition, Cocherell told Jennifer that Nadia had been grounded "[n]ot because they are dating [but] because of the lies and the sneaking out and the panic she caused." Shortly thereafter, Cocherell again messaged Jennifer about Nadia sneaking out, stating that it "needs to stop I now have to replace … [w]indows in my house because of [Nadia and her boyfriends'] behavior." Jennifer testified that she felt like Cocherell's message about Nadia lying was inappropriate and an attempt to "undermine[] the relationship."

---

[2] The reference to a cellphone refers to Cocherell's attempt to recover a cellphone that he provided to Nadia.

¶9 In another message, Cocherell threatened to sue Jennifer and "who ever [sic] told [Nadia] to go to the cops." Later, Cocherell again messaged Jennifer, stating that he filed a small claims action against Jennifer and her "loser son" "for trying to destroy" Cocherell. The circuit court admitted Cocherell's messages to Nadia and Jennifer without objection from defense counsel.

¶10 The jury found Cocherell guilty of both offenses, and the circuit court later sentenced him to a total of ten years' initial confinement followed by five years' extended supervision.

¶11 Cocherell filed a motion for postconviction relief, seeking a new trial. Cocherell argued that his defense counsel was constitutionally ineffective by eliciting "improper vouching testimony" from Rud, in violation of *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), and by failing to object to the admission of Cocherell's messages to Nadia and Jennifer. Additionally, Cocherell requested a new trial in the interest of justice, arguing that the ineffective assistance provided by his defense counsel "affected [his] substantial right to a fair trial and … deprived [him] of his right to a jury trial that comports with the requirements of due process."

¶12 The circuit court held a *Machner*[3] hearing to address Cocherell's motion for postconviction relief. Following the hearing, the court denied Cocherell's motion. Relying on defense counsel's testimony at the *Machner* hearing, the court determined that counsel's questioning of Rud regarding Rud's investigation did not constitute deficient performance because the questioning was

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

a reasonable defense strategy. In particular, defense counsel used the cross-examination to "attack the quality," "thoroughness," and "sloppiness of the investigation." The court also ruled that Rud's challenged testimony was admissible under *Haseltine*. The court next concluded that defense counsel did not perform deficiently by failing to object to the admission of Cocherell's messages to Nadia and Jennifer because the messages were relevant and could have aided the defense's theory of the case that Nadia had motivation to accuse Cocherell of sexual assault. Lastly, the court concluded that there was no basis to order a new trial in the interest of justice.

¶13 Cocherell now appeals. Additional facts are included below as relevant to our discussion of the issues raised on appeal.

## DISCUSSION

### I. Ineffective assistance of counsel

¶14 Cocherell first renews his arguments from his postconviction motion that he is entitled to a new trial because his defense counsel was ineffective by eliciting "vouching" testimony from Rud and by failing to object to the admission of the "irrelevant" and "prejudicial" messages.

¶15 To demonstrate that counsel was ineffective, a defendant must prove both that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to satisfy either prong, we need not consider the other." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

¶16 "Establishing that counsel's performance was deficient 'requires showing that counsel made errors so serious that counsel was not functioning as

the counsel guaranteed … by the Sixth Amendment.'" ***State v. Savage***, 2020 WI 93, ¶28, 395 Wis. 2d 1, 951 N.W.2d 838 (citation omitted). "[T]here is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance,'" and "[c]ounsel's decisions in choosing a trial strategy are to be given great deference." ***Breitzman***, 378 Wis. 2d 431, ¶38 (second alteration in original; citations omitted). We "will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." ***Id.***, ¶65 (alteration in original; citation omitted). "In fact, where a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.'" ***Id.*** (citation omitted).

¶17 Whether a defendant was denied the effective assistance of counsel is a question of constitutional fact. ***Savage***, 395 Wis. 2d 1, ¶25. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." ***Id.*** (citation omitted).

### A. Vouching testimony

¶18 The circuit court found that defense counsel did not perform deficiently by eliciting "vouching" testimony from Rud because counsel had a reasonable trial strategy to elicit that testimony. At the ***Machner*** hearing, defense counsel testified that his "theme" when questioning Rud was that Rud "took [Nadia's] story as the gospel truth without ever questioning it" or engaging in "a real inquiry." Defense counsel stated that he was attempting to demonstrate to the jury that Rud accepted Nadia's accusations "without ever questioning her mental

7

capacity or mental health. That he just gobbled it all up, hook, line, and sinker, even though" Nadia's allegations were made years after the first sexual assault was alleged to have taken place. Defense counsel stated that the questions he asked "brought forth the theme" and that counsel had "carefully constructed" and "planned" the cross-examination of Rud. Moreover, defense counsel stated that Rud's statements regarding Nadia's truthfulness supported the theory that the investigation was deficient because "[t]here was no basis for [Rud] to believe that she was telling the truth"—that is to say, Rud "never went out and asked any sort of probative … inquiring questions" during the investigation.

¶19 Defense counsel also testified that some of his earlier questions to Rud, before Rud's "vouching" testimony, provided a "setup" for the line of questioning Cocherell now challenges. For example, in response to defense counsel's questions, Rud agreed that asking substantive questions and memorializing the answers in a report would allow an investigator to later identify discrepancies in a complaining witness's story and potentially conclude that the witness might be lying about other things. Defense counsel then used this "setup" as a basis to obtain concessions from Rud regarding the "sloppiness in the investigation" and that the entirety of the investigation depended upon taking Nadia's story at face value.

¶20 Furthermore, defense counsel stated that he did not object to Rud's "vouching" testimony because

> a lot of times to go out and object to something like that after the theory and the way that I went out and did that would call attention to it and maybe look like I thought that was some sort of problematic answer and that, uh-oh, that was really something that maybe I didn't want the jury to see and hear—so, no, I didn't object. I don't think that an objection was needed; was necessary; was the smart thing to do.

8

¶21     Defense counsel's testimony at the ***Machner*** hearing supports the circuit court's finding that defense counsel had a trial strategy of criticizing Rud for failing to more thoroughly investigate what defense counsel characterized as Nadia's inconsistent and incredible accusations.  Defense counsel's strategy was not irrational or based upon caprice, *see **Breitzman***, 378 Wis. 2d 431, ¶65, as the entire cross-examination, including the "set-up," resulted in Rud conceding numerous facts to the benefit of Cocherell.  For example, Rud stated that aspects of the investigation were sloppy, that he did not interview certain relevant witnesses because Nadia did not mention those individuals during her interviews with Rud, and that Rud essentially believed Nadia without any substantive follow-up investigation.  Defense counsel strategically chose not to object to Rud's "vouching" testimony because he believed that the testimony supported the defense's theory and he did not want the jury to perceive Rud's testimony as damaging to the defense or contrary to the defense's theory.

¶22     In addition to defense counsel's calculated cross-examination of Rud, counsel used his closing argument to criticize Rud's investigation, stating that Rud did not do a thorough investigation because he did not want to "upset" Nadia and that, in a "real investigation," "officers go out and interrogate, they try to find lies, even little lies on things, because those … show that the person isn't being straightforward."  Defense counsel's strategy permitted the jury to find that Rud believed Nadia without conducting a more thorough investigation.  Such a finding could have called into question the credibility of Nadia's accusations against Cocherell.  Accordingly, defense counsel did not perform deficiently by questioning Rud on cross-examination or by failing to object to the "vouching" testimony.

¶23 We further agree with the State that whether Rud's testimony constituted "vouching" testimony in violation of **Haseltine** is irrelevant under the facts of this particular case. As the State argues, "the sole question with respect to deficient performance is whether the decision to pursue a line of cross-examination that elicited that testimony—and the decision not to object to the testimony when it did—was the product of a reasonable trial strategy." As discussed above, we agree with the circuit court that defense counsel's performance was based on a reasonable trial strategy.

¶24 Cocherell argues that defense counsel's strategy "makes no sense in light of the fact that this was not a 'who done it' case. There is no suggestion that someone else committed the assaults and [Nadia] was merely mistaken in identifying Mr. Cocherell as the perpetrator." Cocherell also criticizes defense counsel's strategy because, according to Cocherell, counsel should have used leading questions during cross-examination if he wanted to criticize Rud's investigation.

¶25 Defense counsel did not criticize the investigation for not seeking the identity of another perpetrator. As demonstrated by his questions during cross-examination and statements during closing argument, defense counsel criticized the investigation for not more thoroughly looking into and vetting the veracity of Nadia's accusations. Additionally, the fact that defense counsel did not ask leading questions throughout his cross-examination of Rud does little to affect our analysis. Even assuming the better course of action would have been to ask more leading questions, defense counsel's cross-examination still permitted him to adequately criticize the investigation as part of his reasonable trial strategy. *See State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 ("Counsel need not be perfect … to be constitutionally adequate." (citation omitted)).

¶26 Further, Cocherell contends that Rud actually did complete a thorough investigation because he interviewed Nadia, applied for a search warrant of Cocherell's home and electronics, and sought Nadia's therapy records. Nonetheless, Rud conceded that aspects of the investigation were sloppy, that he did not record his first interview with Nadia, that he did not interview other potentially relevant witnesses, and that further investigation could have revealed inconsistencies in Nadia's accusations.

¶27 It was reasonable for defense counsel to attack the adequacy of the investigation on these bases and attempt to demonstrate that the investigation failed to uncover—or, in the case of the first interview, preserve—evidence that would have favored the defense. Therefore, we affirm the circuit court's decision denying Cocherell's postconviction motion based on defense counsel's handling of Rud's cross-examination.

*B. Messages*

¶28 The circuit court concluded that defense counsel did not perform deficiently by failing to object to the admission of the messages from Cocherell to Nadia and Jennifer because the messages were "highly relevant," both to the defense and to the State.[4] At the ***Machner*** hearing, defense counsel testified that prior to trial he had reviewed the messages and had discussed them with Cocherell. According to defense counsel, the messages Cocherell sent after

---

[4] In reaching this conclusion, the circuit court appears to have relied on defense counsel's testimony at the ***Machner*** hearing as to his trial strategy for not objecting to the messages. The State argues that defense counsel's trial strategy was reasonable, and Cocherell does not dispute that the court implicitly made this finding. Thus, we will consider this issue with respect to counsel's trial strategy. However, we also note that the messages were relevant and admissible, as we discuss in greater detail below.

Nadia's accusations were "raw" and "from the heart" and they "showed the depth and the conviction that Mr. Cocherell had about [Nadia's] lies." Furthermore, the message about Cocherell's sisters demonstrated that "his sisters stood by him." In addition, defense counsel stated that Cocherell's message to Nadia stating, "[H]ell I won't even touch you with that loser [Nadia's boyfriend's] dick," conveyed the message that Cocherell "had no attraction to her whatsoever" and that he "would never go out and do this. That's crazy."

¶29 Regarding the messages to Jennifer, defense counsel stated that the messages, "[f]or lack of a better term, … threw dirt on [Nadia] and talked about the sort of person that she really was." According to defense counsel, these messages also demonstrated "the nature of the relationship and the situation that was going on in the home," which was relevant because the defense's theory was that Nadia made the accusations against Cocherell to get back at Cocherell for his disciplinary actions and to avoid having to pay Cocherell back for her cellphone and damaged windows.

¶30 Defense counsel also testified that he did not find either the messages to Nadia or Jennifer irrelevant or prejudicial. Defense counsel testified that he was not concerned that the messages would provoke the jurors' "instinct to punish" Cocherell, given the nature of the allegations he faced.

¶31 Defense counsel's testimony at the *Machner* hearing supports the circuit court's implicit finding that defense counsel had a trial strategy of not objecting to the admissibility of the messages. Again, defense counsel's strategy was not irrational or based upon caprice. *See Breitzman*, 378 Wis. 2d 431, ¶65. Defense counsel testified at the *Machner* hearing that he was aware of the

messages before trial, he discussed them with Cocherell, and he devised a strategy to deal with them.

¶32    Likewise, although the State used the messages to support its theory of the case, defense counsel's handling of the messages was not irrational because, as counsel testified, the messages could reasonably demonstrate Cocherell's adamant denial of the accusations and provided evidence supporting the defense's theory for why Nadia would falsely accuse Cocherell. The fact that the State used the messages to argue that Cocherell acted inappropriately and attempted to intimidate Nadia does not change the fact that the evidence could reasonably have supported a different interpretation by the jury.

¶33    Cocherell argues that defense counsel's reasoning for not objecting to Cocherell's message to Nadia concerning her boyfriend's "dick" is "patently unreasonable" because "[i]t is a long-accepted principle that sexual assault is a crime of violence and power and not a crime of sexual attraction." *See State v. Smith*, 2010 WI 16, ¶35, 323 Wis. 2d 377, 780 N.W.2d 90. However, as the State contends, Cocherell's argument oversimplifies defense counsel's strategy. Defense counsel testified that he did not object to the message because, in addition to the reasoning challenged by Cocherell on appeal, counsel felt that the message conveyed that Cocherell vehemently denied the accusations and that Cocherell "would never go out and do this. That's crazy."

¶34    We further agree with the circuit court that the messages would have likely been admitted regardless of whether defense counsel objected. At a minimum, the messages were relevant for the same reasons noted above: they supported the defense's theory that Nadia made up the accusations and that Cocherell vehemently and consistently denied the allegations. *See* WIS. STAT.

§ 904.01 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

¶35    Additionally, the messages were not unfairly prejudicial. *See* WIS. STAT. § 904.03; *State v. Hurley*, 2015 WI 35, ¶¶87-88, 361 Wis. 2d 529, 861 N.W.2d 174. As the State argues on appeal, "the allegations against Cocherell were likely far more alarming to the jury than his vehement, if aggressive, denials that he committed the crimes." Counsel cannot be considered deficient for failing to object to the admissible evidence. *State v. Maday*, 2017 WI 28, ¶55, 374 Wis. 2d 164, 892 N.W.2d 611. Therefore, we affirm the circuit court's decision denying Cocherell's postconviction motion based on defense counsel's failure to object to the admission of the messages sent by Cocherell.

## II. New trial in the interest of justice

¶36    Lastly, Cocherell asks this court to grant him a new trial in the interest of justice, pursuant to WIS. STAT. § 752.35, because of Rud's impermissible "vouching" testimony and the admission of the messages. We have discretion to grant a new trial in the interest of justice "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." *Id.*; *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. "Our discretionary reversal power is formidable, and should be exercised sparingly and with great caution." *Williams*, 296 Wis. 2d 834, ¶36.

¶37    We reject Cocherell's invitation to grant him a new trial. Cocherell's case was fully tried to a jury over the course of three days. Cocherell received the assistance of counsel guaranteed to him and, based on the analysis

above, the real controversy was fully tried pursuant to defense counsel's reasonable trial strategy. We see no basis in the record to overturn Cocherell's conviction.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.